IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

LEAH WARNER,                          :

    Plaintiff,                        Case No. 3:24-cv-323

    v.                            :     Judge Walter H. Rice

HEALTH CAROUSEL, LLC,                       Mag. Judge Peter B. Silvain, Jr.

    Defendant.                        :

---

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN
PART DEFENDANT HEALTH CAROUSEL, LLC'S MOTION TO DISMISS
(DOC. #4); CLAIMS ONE AND THREE OF COMPLAINT OF PLAINTIFF
LEAH WARNER (DOC. #1) SHALL PROCEED TO DISCOVERY; CLAIMS
TWO AND FOUR DISMISSED WITHOUT PREJUDICE TO REFILING
WITHIN TWENTY-EIGHT DAYS OF ENTRY; FAILURE TO FILE
AMENDED CLAIMS WITHIN THAT TIME WILL RESULT IN DISMISSAL
OF CLAIMS TWO AND FOUR WITH PREJUDICE AND JUDGMENT
ULTIMATELY ENTERING IN FAVOR OF DEFENDANT AND AGAINST
PLAINTIFF ON THOSE CLAIMS

---

Before the Court is the Motion to Dismiss of Defendant Health Carousel,

LLC, pursuant to Federal Rule of Civil Procedure 12(b)(6), "for failure to state

claims under the Family Medical Leave Act ('FMLA'), the Americans with

Disabilities Act ('ADA'), and Ohio law."  (Motion, Doc. #4, PAGEID 27, citing 29

U.S.C. § 2601 *et seq.*; 42 U.S.C. § 2000e-2 *et seq.*; 42 U.S.C. § 12101 *et seq.*; OHIO

REV. CODE § 3717.01 *et seq.*).  For the reasons set forth below, the Motion is

SUSTAINED IN PART AND OVERRULED IN PART.

## I.    Factual Background and Procedural History

As Defendant's Motion arises under Rule 12(b)(6), the Court accepts as true all well-pleaded factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Plaintiff Leah Warner began working for Defendant on or around March 6, 2023, as a "Travel Nurse Recruiter II." (Doc. #1, PAGEID 3, ¶¶ 16-17). Beginning in January 2024, Plaintiff began voicing concerns that Defendant's company policies were being violated and that patients' personal identifying information was being mishandled. (*Id.* at PAGEID 3-4, ¶¶ 20, 22-23 ). After voicing these concerns, Plaintiff "began to be left out of meetings, she was left out of a trip all of her co-workers were allowed to go on, and had her questions and concerns ignored by managers[.]" (*Id.* at PAGEID 4, ¶ 25). In March 2024, Plaintiff met with Abbie Zimmerman, Defendant's Vice President of Recruitment (*id.* at PAGEID 3, ¶ 18), who informed Plaintiff "that Defendant thought it was best that [Plaintiff] began looking for employment elsewhere[.]" (*Id.* at PAGEID 4, ¶ 26).

While Plaintiff continued working for Defendant, her husband's health worsened, and in April 2024, Plaintiff requested time off under the FMLA to care for him. (Doc. #1, PAGEID 5, ¶¶ 39-41). Plaintiff's request was denied, and "[o]n or around April 19, 2024, . . . [Plaintiff] was told by her supervisor Crista Reichardt that she needed to resign by May 17, 2024[.]" (*Id.* at ¶ 44). Three days later, Reichardt and Defendant's Recruiting Manager Nick Hoffman again requested that Plaintiff resign. (*Id.* at PAGEID 6, ¶ 46). Plaintiff again refused, and "was met with increased hostility and harassment in the workplace." (*Id.* at ¶ 47). Finally, on or

2

around May 10, 2024, "Reichardt and Hoffman informed [Plaintiff] that if she did not resign her Personal Time Off ('PTO') would be taken from her and she would not be given her commissions she was owed[.]" (*Id.* at ¶ 49). Plaintiff, feeling she had no choice, resigned that day. (*Id.* at ¶ 54).

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") shortly after resigning. (Doc. #1, PAGEID 2, ¶ 10). On September 9, 2024, the EEOC dismissed Plaintiff's Charge and issued a "Right to Sue Letter" to Plaintiff. (*Id.* at ¶ 12, citing Doc. #1-1, PAGEID 11). Plaintiff filed suit on December 9, 2024, raising claims of FMLA Interference (Claim One) and Retaliation (Claim Three), wrongful termination under Ohio law (Claim Two), and ADA discrimination by association (Claim Four). (*Id.* at PAGEID 7-9, ¶¶ 56-86).

Defendant filed the instant Motion on February 7, 2025. Therein, Defendant argues that Plaintiff "was never denied leave to care for her husband under the FMLA. Neither did she disclose that her husband was disabled, or that she needed an accommodation to care for any of his alleged disabilities." (Doc. #4, PAGEID 28). As to Claim One, Defendant argues that Plaintiff merely alleged a barebones legal conclusion that she requested "FMLA leave" to take care of her husband. (*Id.* at PAGEID 29, citing Doc. #1, PAGEID 7, ¶¶ 62-63). "There is nothing about a certification for leave, or any continuing need for leave, for any specific period." (*Id.* at PAGEID 30, citing *Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012)). Moreover, Defendant claims that Plaintiff does not allege any facts

3

suggesting that her husband's illness would have qualified her for FMLA, meaning Claim One is not plausible and cannot proceed. (*Id.*).

Defendant asserts that the rest of Plaintiff's claims must also be dismissed. As to Claim Two, termination in violation of public policy, Defendant notes that the statute setting forth the public policy that Plaintiff allegedly furthered (preventing the mishandling of confidential information) applies only to "retail food establishments and food service operations[,]" neither of which applies in this instance. (Doc. #4, PAGEID 31, citing OHIO REV. CODE §3717.01; Doc. #1, PAGEID 3, 7, ¶¶ 17, 65b). Defendant claims that, absent an actionable public policy, Claim Two cannot proceed. Defendant further argues that Claim Three, FMLA retaliation, is not colorable, because the only adverse employment action claimed by Plaintiff was that she was constructively discharged, which Defendant asserts is not an adverse action under the FMLA. (*Id.* at PAGEID 30-31, 32, citing *Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 447 (6th Cir. 1999)). Similarly, as to Claim Four, Defendant claims that an alleged constructive discharge cannot form the basis of an "ADA claim, associational or otherwise," and that absent any other adverse action, an ADA claim cannot survive. (*Id.* at PAGEID 32, quoting *Hammon*, 165 F.3d at 447; citing *Stansberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 487 (6th Cir. 2011)). Moreover, Defendant asserts that the Claim Four as pleaded is unexhausted, since Plaintiff did not allege an associational discrimination claim in her EEOC Charge. (*Id.* at PAGE 32-33, quoting *EEOC v. Bailey Co., Inc.*, 563 F.2d 439, 446 (6th Cir. 1977)).

4

In her memorandum *contra*, Plaintiff argues that she satisfied her pleading burden at the Rule 12(b)(6) stage by providing Defendant fair notice of the gravamen of her claims. (Memo. in Opp., Doc.#5, PAGEID 51, citing FED.R.CIV.P. 8(a)(2)). Specifically, as to Claim One, Plaintiff alleges that:

> (1) [S]he was an eligible employee; (2) the defendant was an employer as defined under the FMLA; (3) she was entitled to leave under the FMLA; (4) she gave her employer notice of her intention to take leave; and (5) her employer denied her FMLA benefits to which she was entitled.

(*Id.* at PAGEID 53, 55 nn.13, 17-22, citing *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005); Doc. #1, PAGEID 5, 6, 7, 8, ¶¶ 37-38, 40, 49-52, 54-55, 58-62, 71-75). Plaintiff asserts that the alleged constructive discharge is an adverse action under both federal and state law, and thus, she has also plausibly pleaded the essential elements of Claim Three, FMLA retaliation. (*Id.* at PAGEID 56-58 nn. 27, 31, quoting *Muldrow v. City of St. Louis, Mo.*, 601 U.S. 346, 350 (2024); *Logan v. Denny's, Inc.*, 259 F.3d 558, 559 (6th Cir. 2001); citing Doc. #1, PAGEID 5-6, 7, 8, 9, ¶¶ 41-47, 49, 51, 54, 62, 72, 80, 82-83; *Mauzy v. Kelly Serv., Inc.*, 75 Ohio St. 3d 578, 588 (1996)).

Plaintiff argues that the documents attached by Defendant to its Motion—Plaintiff's EEOC Charge and August 26, 2024, "Notice of Claims" letter to Defendant (Doc. #14-1)—are not part of the pleadings, and thus: (a) the documents must be excluded from consideration, or (b) the Motion must be converted to one for summary judgment. (Doc. #5, PAGEID 59, quoting FED.R.CIV.P. 12(d)). Moreover, Plaintiff claims, the documents show why Claim Four was properly

exhausted; Plaintiff "properly checked the 'disability' box and 'other' box" on her EEOC Charge, in which she claimed discrimination because "[o]n or about the beginning of April 2024[,] Leah sent an email regarding her need to take leave because of *her husband's serious medical conditions*." (*Id.* at PAGEID 60 (emphasis in original), quoting Doc. #4-1, PAGEID 43).

Further, as to Claim Two, Plaintiff argues that her alleged constructive discharge falls under Ohio's public policy exception to at-will employment, and that the citation to Ohio Revised Code section 3717.01 "is merely a scrivener's error." (Doc. #4, PAGEID 61, 62). Rather, Plaintiff claims, she has met the clarity and jeopardy elements of a "cause of action for wrongful discharge in violation of public policy," (*id.* at PAGEID 61 n.46, citing *Blackburn v. Am. Dental Ctrs.*, 2014-Ohio-5329, ¶ 14, 22 N.E.3d 1149 (10th Dist.)), by articulating the source of the public policy—preventing the "improper handling of confidential client information"—and alleging that her firing would have a chilling effect on others seeking to further that policy. (*Id.* at PAGEID 62, quoting Doc. #1, PAGEID 7, ¶ 65b). Plaintiff also asserts that Claim Two should proceed because she plausibly alleged the other two elements of the claim—that the discharge was related to her protected activity (causation element) and that Defendant "lacked an overriding legitimate business justification for the dismissal[.]" (*Id.* at PAGEID 61, 62-63, quoting Doc. #1, PAGEID 3, 4, 7-8, ¶¶ 20-21, 27-32, 65a-69). Finally, in the alternative, Plaintiff "requests leave [to amend] to clarify the provisions and

6

policies surrounding her public policy claim and add additional facts to her FMLA claims." (*Id.* at PAGEID 63-64, citing FED.R.CIV.P. 15(a)(2)).

In the Reply, Defendant reiterates its argument that Plaintiff had failed to set forth a viable FMLA discrimination or retaliation claim, because Plaintiff could not "point to plausible allegations of (i) inpatient or continuing care by a health care provider and (ii) an adverse employment action connected to protected activity under the FMLA." (Doc. #6, PAGEID 66).  Defendant notes that whether a health condition is serious enough to come within the scope of the FMLA is a question of law, and claims that Plaintiff failed in her burden to allege that her husband "had 'an illness, injury, impairment, or physical or mental condition that involves – (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider.'" (*Id.* at PAGEID 67, quoting 29 U.S.C. § 2611(11); citing *Alston v. Sofa Exp., Inc.*, No. 2:06-cv-491, 2007 WL 3071662, *8 (Graham, J.)).  "Without such facts, Ms. Warner cannot plausibly allege she was qualified for leave under the FMLA based on her husband's medical condition." (*Id.*, citing 29 C.F.R. §§ 825.114, 825.115).  Further, Defendant claims that Plaintiff never informed Defendant of her husband's FMLA-qualifying health condition, meaning that Plaintiff failed to satisfy the prerequisites for an FMLA interference or retaliation claim.  (*Id.*, citing *Wallace v. FedEx Corp.*, 764 F.3d 571, 586 (6th Cir. 2006)).

Finally, as to Claims One and Three, Defendant asserts that constructive discharge is not an adverse employment action under the FMLA, and even if it

were, Plaintiff failed to allege how Defendant deliberately made her working conditions "objectively intolerable," such that she would have no choice but to quit. (Doc. #6, PAGEID 69, quoting *Penn. State Police v. Suders*, 542 U.S. 129, 147 (2004)); *Vonderhaar v. Waymire*, 797 F. App'x 981, 992 (6th Cir. 2020)). Defendant notes that the alleged worsened working conditions—increased workload, occupational isolation, not being asked to go on a work trip, and being encouraged to look elsewhere for jobs—all occurred *prior to* any request by Plaintiff to take time off to care for her husband. (*Id.* at PAGEID 69-70, citing Doc. #1, PAGEID 3, 4, 5, ¶¶ 19, 25-26, 41). Moreover, even after Plaintiff's supervisor allegedly asked her to resign and Plaintiff refused, she continued to be employed by Defendant without repercussion until she voluntarily resigned three weeks later. (*Id.* at PAGEID 70, citing Doc. #1, PAGEID 5, 6, ¶¶ 44, 47-49). Defendant argues that, as Plaintiff does not allege that anyone told her that she would be fired if she did not resign, and Defendant did not interfere with her salary, benefits or unused personal time off, Plaintiff has not alleged constructive discharge or any other adverse employment action, and thus, Claims One and Three must be dismissed. (*Id.*, citing Doc. #1, PAGEID 6, ¶ 54).

Defendant asserts that Claim Two is unavailing, irrespective of any scrivener's error, because Plaintiff has failed to identify a constitutional or statutory provision that enshrines a public policy of preventing the mishandling of confidential information; absent such a provision, there can be no cause of action for wrongful termination in violation of such a policy. (Doc. #6, PAGEID 71, citing

*Greeley v. Miami Valley Maint. Contrs.*, 49 Ohio St.3d 228 (1990), paragraphs 1-3 of syllabus; *Miracle v. Ohio Dept. of Veterans Servs.*, 157 Ohio St.3d 413, 2019-Ohio-3308, ¶ 13). As to Claim Four, Defendant argues that the EEOC Charge is a public record and, thus, may be considered by the Court without converting the Motion. (*Id.* at PAGEID 72-73, quoting *Caplinger v. Uranium Disposition Servs., LLC*, No. 2:08-cv-548, 2009 WL 367407, *2 (S.D. Ohio Feb. 11, 2009) (Graham, J.)). Further, despite Plaintiff checking the "disability" box on her EEOC charge, "she specified in the particulars that she was terminated due to her own disability." (*Id.* at PAGEID 73, citing Doc. #4-1, PAGEID 37). Indeed, Defendant asserts, there was no mention in the Notice of Claims letter of a potential claim for ADA associational discrimination. (*Id.* at PAGEID 73-74, citing Doc. #4-1, PAGEID 43-47). Defendant concludes that the absence of such language leaves Claim Four or any associational discrimination claim unexhausted, and asserts that it must be dismissed for that reason. (*Id.* at PAGEID 74, citing *Parsons v. Buehler's Asphalt Paving, Inc.*, No. 3:21-cv-567, 2021 WL 2688528, *2 (N.D. Ohio Jun. 30, 2021); *George v. City of Cincinnati*, No. 1:16-cv-688, 2018 WL 1305465, *4 (S.D. Ohio Mar. 9, 2018) (Dlott, J.)). Finally, Defendant argues that any amended complaint could not survive a renewed motion to dismiss, and, thus, leave to amend should be denied as futile. (*Id.* at PAGEID 74, citing *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010)).

The matter is now ripe for decision.

## II.    Applicable Law

### A.    Motion to Dismiss

Rule 8(a) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  The complaint must provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Rule 12(b)(6) allows a party to move for dismissal of a complaint on the basis that it "fail[s] to state a claim upon which relief can be granted."  The moving party "has the burden of showing that the opposing party has failed to adequately state a claim for relief."  *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citing *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991)).  The purpose of a Rule 12(b)(6) motion to dismiss "is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true."  *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993).  In ruling on a Rule 12(b)(6) motion, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its [well-pleaded] allegations as true, and draw all reasonable inferences in favor of the plaintiff."  *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012) (quoting *Treesh*, 487 F.3d at 476).

Nevertheless, to survive a Rule 12(b)(6) motion, the complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  Unless the facts alleged show that the plaintiff's claim crosses "the

line from conceivable to plausible, [the] complaint must be dismissed." *Id*.

Although this standard does not require "detailed factual allegations," it does

require more than "labels and conclusions" or "a formulaic recitation of the

elements of a cause of action." *Id*. at 555. "Rule 8 . . . does not unlock the doors

of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678-79 (2009). Legal conclusions "must be supported by

well-pleaded factual allegations . . . [that] plausibly give rise to an entitlement of

relief." *Id*. at 679. "Although for the purposes of this motion to dismiss we must

take all the factual allegations in the complaint as true, we are not bound to accept

as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478

U.S. 265, 286 (1986).

## B.   Causes of Action

As to Claim One, FMLA interference, Plaintiff must plausibly allege that:

> (1) [S]he was an eligible employee; (2) the defendant was an
> employer as defined under the FMLA; (3) the employee was entitled
> to leave under the FMLA; (4) the employee gave the employer notice
> of her intention to take leave; and (5) the employer denied the
> employee FMLA benefits to which she was entitled.

*Killian v. Yorozu Auto. Tenn., Inc.,* 454 F.3d 549, 556 (6th Cir.2006). Claim Two,

wrongful termination in violation of public policy, must contain sufficient

allegations that:

> (1) [A] clear public policy exists and is manifested in a state or federal
> constitution, in statute or administrative regulation, or in the common law
> (the clarity element), (2) dismissing employees under circumstances like
> those involved in the plaintiff's dismissal would jeopardize the public policy
> (the jeopardy element), (3) the plaintiff's dismissal was motivated by

conduct related to the public policy (the causation element), and (4) the employer lacked an overriding legitimate business justification for the dismissal (the overriding-justification element).

*Sutton v. Tomco Machining, Inc.*, 129 Ohio St. 3d 153, 2011-Ohio-2723, ¶ 9, citing

*Collins v. Rizkana* 73 Ohio St. 3d 65, 69-70 (1995). "The clarity and jeopardy

elements involve questions of law; the causation and overriding-justification

elements involve questions of fact." *Id.*, citing *Collins*, 73 Ohio St. 3d at 70. As to

Claim Three, Plaintiff must plausibly set forth that:

> (1) [S]he was engaged in an activity protected by the FMLA; (2) the employer knew that she was exercising her rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to her; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action.

*Killian*, 454 F.3d at 556. Finally, Claim Four, ADA associational discrimination,

requires Plaintiff to allege that:

> (1) [T]he employee was qualified for the position; (2) the employee was subject to an adverse employment action; (3) the employee was known to be associated with a disabled individual; and (4) the adverse employment action occurred under circumstances that raise a reasonable inference that the disability of the relative was a determining factor in the decision.

*Stansberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 487 (6th Cir. 2011).

## III.  Analysis

### A.  Claim One

Defendant argues that Claim One fails because Plaintiff did not allege "that

she gave notice of her intention to take leave under the FMLA and was denied

FMLA benefits to which she was entitled." (Doc. #4, PAGEID 29-30). Defendant is

12

correct that Plaintiff did not allege that she informed Defendant of the nature of her husband's health conditions, much less that they were severe enough to entitle Plaintiff to FMLA caretaker leave. However, Plaintiff need not mechanically plead a *prima facie* case (Doc. #5, PAGEID 50 n.3, citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-11 (2002)); rather, she need only satisfy both the fair notice requirement of Rule 8(a)(2) and the plausibility threshold of *Twombly* and *Iqbal*.[1] Here, Plaintiff alleges that she requested, and was denied, time off to care for her husband on two separate occasions. (Doc. #5, PAGEID 54, quoting Doc. #1, PAGEID 5, ¶¶ 41, 44).

While Plaintiff does not allege that she informed Defendant of her specific intent to take leave under the FMLA, "in providing notice, the employee need not use any magic words" to evince her intent to take FMLA leave. *Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 402 (3d Cir. 2007); *see also Keogh v. Concentra Health Servs., Inc.*, 752 F. App'x 316, 324 (6th Cir. 2018), citing *Smith v. Henderson*, 376 F.3d 529, 535-36 (6th Cir. 2004) ("we do not require 'magic words' for [an FMLA] request for accommodation to be valid[.]"). The key issue is whether Plaintiff provided Defendant "with reasonably adequate information under the circumstances that the employee seeks leave under the FMLA." *Id.* It is

---

[1] Although Plaintiff's memorandum *contra* makes passing reference to the need for facial plausibility (Doc.#5, PAGEID 50 n.2, quoting *Bassett v. Nat'l Coll. Athletic Ass'n.*, 528 F.3d 426, 430 (6th Cir. 2008), the Court notes that almost all of the cases cited by Plaintiff with respect to her pleading burden predate *Twombly* and *Iqbal*. These cases relied upon by Plaintiff themselves rely upon the "no set of facts" standard of *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), making their applicability limited post-*Iqbal*.

plausible that Plaintiff, in saying that she needed time off to care for a sick immediate family member, complied with Defendant's policies to put it on notice of Plaintiff's intent to take FMLA, and that Defendant, in telling her that she could not take time off, was denying an FMLA request. As there is no dispute that Plaintiff has plausibly alleged the remaining elements of an FMLA interference claim, *Killian*, 454 F.3d at 556, Claim One must be allowed to proceed.

###    B.    Claim Two

Defendant argues that, for two reasons, Claim Two fails as a matter of law. *First*, Defendant notes—and Plaintiff does not dispute—that the statutory provision cited in the Complaint does not cover Plaintiff or her actions. (Doc. #4, PAGEID 31, citing OHIO REV. CODE § 3717.01 *et seq.*; Doc. #1, PAGEID 7, ¶ 65b). *Second*, under Ohio law, a claim for termination in violation of public policy is only actionable if there is a state constitutional or statutory expression protecting the public policy, and Plaintiff's purported public policy—guarding against "improperly handling confidential client information"—does not fall within the scope of any public policy exception. (Doc. #6, PAGEID 71, quoting Doc. #5, PAGEID 63).

The statutory provision cited in the Complaint covers retail fast food establishments, which has nothing to do with handling confidential health information, and Plaintiff cites to no other federal or state constitutional or statutory provision that would embody the protection of such confidential information. Thus, Plaintiff has failed to allege plausibly the "clarity element" of a

discharge in violation of public policy claim, and Claim Two must be dismissed as legally insufficient. However, as discussed below, Plaintiff will be given a chance to allege an applicable public policy that was supposedly violated by her termination.

### C. Claim Three

Defendant raises two arguments as to why Claim Three should be dismissed. *First*, Plaintiff's allegations of protective activity—that she "attempted to utilize" and "requested to utilize her qualified FMLA leave"—are barebones and conclusory, and thus insufficient post-*Iqbal*. (Doc. #4, PAGEID 32, quoting Doc. #1, PAGEID 8, ¶¶ 71-72). *Second*, Defendant claims that any voluntary resignation—even pleaded as a constructive discharge—cannot constitute an adverse employment action, and that Plaintiff failed to allege any other adverse action. (*Id.*, quoting *Hammon.*, 165 F.3d at 447).

The United States Court of Appeals for the Sixth Circuit has not interpreted *Hammon* as foreclosing constructive discharge from being alleged as an adverse action, *see*, *e.g.*, *Groening v. Glen Lake Cmty. Schs.*, 884 F.3d 626, 630-31 (6th Cir. 2018) (upholding district court's allowing plaintiff to proceed on FMLA retaliation claim based on an alleged constructive discharge), and the undersigned declines to do so here. As discussed with Claim One, Plaintiff plausibly alleged in the Complaint that she specifically requested FMLA leave from Defendant, and there is no dispute that such a request is protected activity. Because Plaintiff also

15

plausibly alleged the adverse retaliatory action of constructive discharge, *Killian*, 454 F.3d at 556, Defendant's Motion is overruled as to Claim Three.

### D.    Claim Four

As discussed above, Defendant argues that Plaintiff's claim of associational discrimination under the ADA must be dismissed as unexhausted, since Plaintiff did not raise such a claim in his EEOC Charge.  (Doc. #4, PAGEID 33).  Plaintiff responds that the EEOC Charge is neither a part of nor essential to the Complaint, and cannot be considered without converting Defendant's Motion to one for summary judgment.  (Doc. #5, PAGEID 59, quoting FED.R.CIV.P. 12(d)).  Plaintiff's argument is belied by: her attaching the EEOC's Right to Sue Letter as an exhibit to the Complaint (Doc. #1-1),the EEOC Charge being referenced in (and thus, central to) the Complaint (Doc. #1, PAGEID 2, ¶ 10), and the longstanding practice of the United States Court of Appeals for the Sixth Circuit allowing such documents to be considered in ruling on a Rule 12 motion.  *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001); *see also Meyers v. Cincinnati Bd. of Educ.*, 983 F.3d 873, 880 (6th Cir. 2020) (district court may consider matters of public record attached to pleadings or motion).  Thus, the Court may properly consider the EEOC Charge without converting Defendant's Motion.

Plaintiff also asserts that she raised a claim of associational discrimination in the EEOC Charge: (1) by checking the "disability" and "other" boxes as the type of discrimination she experienced, and (2) by stating in her counsel's August 26, 2024, Notice of Claims letter to Defendant that the impetus for the discriminatory

conduct was Plaintiff sending "an email regarding her need to take leave because of her husband's serious medical condition." (Doc. #5, PAGEID 60 nn. 38, 40, citing Doc. #4-1, PAGEID 37, 43). While the Notice of Claims letter contains the quoted language (Doc. #4-1, PAGEID 43), there is no mention of an intent to assert an ADA claim, for associational discrimination or otherwise, despite the letter threatening claims of FMLA interference, FMLA retaliation, and other federal and state law violations. (*Id.* at PAGEID 43-47). Indeed, the only references to the ADA are in the Charge itself, in which Plaintiff states, "I was discriminated against by Respondent on the basis of *my* disability[,]" and, "I was terminated due to *my* disability, in violation of . . . the Americans with Disabilities Act [and] the ADA Amendments Act[.]" (*Id.* at PAGEID 37 (emphasis added)). There is no reasonable reading of the EEOC Charge that suggests that Plaintiff raised a claim of associational discrimination therein. Thus, any ADA claim was not exhausted before the EEOC, and Plaintiff is not able to bring such a claim before this Court. *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 309 (6th Cir. 2000). Accordingly, Claim Four must be dismissed.

### E. Leave to Amend

Defendant argues that Plaintiff should not be given leave to amend, because: (1) "[t]here is no public policy under Ohio law designed to protect Ms. Warner in the employment situation she has described"; and (2) Plaintiff cannot exhaust an associational discrimination claim with the EEOC. (Doc. #6, PAGEID 74). The Court, however, is not prepared to conclude that Plaintiff could not

provide sufficient factual allegations in support of Claims Two and Four, such that any amendments to those claims would necessarily be dismissed under a renewed Rule 12 motion.[2] Thus, leave to amend is not futile, *Riverview*, 601 F.3d at 512, and the Court will allow Plaintiff one more chance to set forth plausible claims for relief.

## IV.  Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss (Doc. #4) is SUSTAINED IN PART AND OVERRULED IN PART. Claims One and Three in Plaintiff's Complaint (Doc. #1) shall proceed to discovery. Claims Two and Four are DISMISSED WITHOUT PREJUDICE to refiling within twenty-eight (28) days of entry. Failure to refile will result in Claims Two and Four being dismissed with prejudice and judgment ultimately entering in favor of Defendant and against Plaintiff on those claims.


IT IS SO ORDERED.

Walter H. Rice

WALTER H. RICE, JUDGE
April 25, 2025                                UNITED STATES DISTRICT COURT

---

[2] However, any claim of associational discrimination is likely barred due to Plaintiff having not filed such a charge with the EEOC within the 300-day period of limitations. *Amini*, 259 F.3d at 498, quoting *Alexander v. Local 496, Laborers' Int'l Union of N. Am.*, 177 F.3d 394, 407 (6th Cir. 1999).